UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**TIMOTHY KELLY, on behalf of
himself and all others similarly situated,**

        **Plaintiff,**

**v.**                                                **Civil Action No 3:13-cv-311 (JAG)**

**NATIONSTAR MORTGAGE, LLC,**

        **Defendant.**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

COME NOW the Plaintiff, Timothy Kelly, on behalf of himself and others similarly situated, by counsel, and as for his Memorandum in Opposition to the Defendant's Motion to Dismiss the Complaint, Plaintiff respectfully submits the following memorandum.

## INTRODUCTION

Defendant, NationStar Mortgage, LLC ("Defendant"), is an acknowledged "debt collector" governed by the Federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*.   It does not contest these allegations, self-describes itself as a debt collector in some of its correspondence and contends in its communications that the Plaintiff was in default on the mortgage loan Defendant began to service for Fannie Mae. And Defendant describes its core servicing business as dependent upon, "[…] incentive fees from owners of the loans that we service for meeting certain delinquency and loss goals and for arranging successful loss mitigation programs."[1]  NationStar's servicing business is, "[…] collecting mortgage payments

---

[1] 2012 NationStar Mortgage Holdings Inc. Annual Report on Form 10-K. Available at https://www.snl.com/Cache/1001174599.PDF?Y=&O=PDF&D=&FID=1001174599&T=&IID=4288863

from homeowners and delivering the funds to investors like Fannie Mae and the mortgage-backed securities trusts."[2]   In fact, with the promise of "'high-touch' servicing of troubled loans", NationStar "cozied up to Fannie Mae execs (some of whom later came to work for Nationstar) and forged an agreement that steered some $25 billion in troubled mortgages [its] way." *Id.*  As the Complaint plausibly alleges, there is no other purpose or role for NationStar in the mortgage relationship other than the collection of the mortgage debt.  Everything it does with regard to the loan is by definition "in connection with the collection" of the debt and its communications with the Plaintiff about that debt were thus governed by the FDCPA.

Defendant argues otherwise, misstating the conclusions of some cases; suggesting applicability of others that on their face are inapposite.  And of course, largely ignoring law in this Circuit, District and even courthouse which rejected the arguments NationStar now asserts. The Court should not accept Defendant's invitation to detour from the broadly construed language of the statute or the sufficiently alleged facts in the Complaint. Such reasoning ignores the purpose of the FDCPA and the single purpose that Defendant serves – to collect money from consumer mortgage obligors. It is not a trustee. It is not an appraiser. It is not a loan guarantor nor a secondary beneficiary such as Fannie Mae or Freddie Mac. Defendant's sole role is as a debt collector and it would not communicate with the Plaintiff or participate in the mortgage business other than to obtain money from the consumer and pass it along to its principal, the loan beneficiary. It was within this context and only this context the Nationstar communicated with the Plaintiff. Accordingly, Defendant's motion should be denied.

---

[2] *Fortress Is Betting On Bill Collectors With Mortgage Servicer Nationstar*, Forbes, June 10, 2013. Available at http://www.forbes.com/sites/danielfisher/2013/05/22/fortress-is-betting-on-bill-collectors-with-mortgage-servicer-nationstar/.

Plaintiff filed this class action Complaint against Defendant alleging two violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") arising from two October 30, 2012 letters that Defendant sent to Plaintiff and other similarly situated consumers. One of the letters is entitled "Notice of Assignment, Sale, or Transfer of Servicing Rights" and the other is designated as the "FDCPA Letter" in Defendant's memorandum. In particular, Plaintiff alleges that Defendant's "Notice of Transfer of Servicing Rights" violated § 1692e(11) because it fails to clearly disclose: (1) that the debt collector is attempting to collect a debt, and (2) that any information obtained will be used for that purpose. In addition, Count II of the Complaint alleges that Defendant's FDCPA Letter violates § 1692g(a)(1), which requires a debt collector to provide a consumer with a written notice containing, *inter alia*, the amount of the debt on the date the §1692g notice is sent. The FDCPA Letter is dated October 30, 2012, yet provided that the amount purportedly owed as of October 15, 2012.[3]

Defendant supports its motion to dismiss Count I by simply ignoring the salient facts alleged in the Complaint and disregarding the controlling opinion from the Fourth Circuit in *Warren v. Sessoms & Rogers*, 676 F.3d 365(4th Cir. 2012). *Warren* teaches that 15 U.S.C. § 1692e(11) "expressly prohibits this exact *omission* by requiring debt collectors to disclose their status in every communication with a consumer." *Id*. at 374 (emphasis in original). Realizing the

---

[3] These are not simply hyper-technical violations as suggest by the Defendant. The societal value of the Act's disclosure rules is buttressed both by the requirement that Nationstar disclose the collection purpose of all its communications and that it tell the consumer what the amount of the debt it seeks to collect is in a truthful and unconfusing fashion. The FDCPA notes that "[c]ollection abuse takes many forms," S.Rep. No. 95-382, 95th Cong. 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1696. Most of the "collection abuses" outlined in the legislative history involve improper contacts with consumer debtors. *Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142, 1149 (9th Cir. 1998). Nationstar's failure to identify the collection purpose of one letter and its failure to state correctly the amount of the debt in another letter are clear examples of the value of the mandatory disclosure rules that it has violated in its communications with the class in this case.

overwhelming obstacle established by *Warren*, Defendant relies almost exclusively on non-binding and largely inapposite case law.  None of the cases cited by the Defendant reach the conclusion it urges. In fact, ironically, Defendant focuses most of its argument on *Thompson v. BAC Home Loans Servicing, L.P*., 2010 U.S. Dist. LEXIS 30891 (N.D. Ind. 2010), a case involving a communication that actually contained the mandatory § 1692e(11) disclosure and an alleged violation of an entirely different section of the FDCPA (§ 1692g). Even if Defendant's recitations were accurate, there is no doubt that a "least sophisticated consumer" could interpret the Notice of Servicing Transfer as an attempt to obtain payment based on the language in the letter, including that which state: "[t]he date that Nationstar Mortgage will start accepting payments from you is 10/15/12. You can pay online via the Nationstar Mortgage website at [www.MyNationstarMTG.com](www.MyNationstarMTG.com), or you can send all payments due on or after that date to.... Enclosed is your Welcome Letter which includes a payment coupon with detailed loan information." The letter opens with "You are hereby notified that the servicing of your mortgage, that is, the right to collect payments from you is being assigned, sold or transferred" to Nationstar. (Def.'s Mem., Ex. 2). This is even more apparent at the Fed. R. Civ. P. 12(b)(6) stage of the litigation and within the context of the other package of documents mailed the same day as the Notice of Servicing Transfer, which Defendant admits was sent in connection with an attempt to collect a debt. Plainly, Defendant may not communicate with a consumer as a debt collector in connection with a debt one minute (*i.e.*, the Welcome Letter and the FDCPA Letter) and then turn around and not to be communicating in connection with the debt the next minute. No consumer – let alone the least sophisticated consumer – would perceive these communications on the same day as anything other than being made in connection with the alleged debt.

Similarly, Defendant supports its motion to dismiss Count II by ignoring the seminal opinion from the Seventh Circuit in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC*, 214 F.3d 872 (7th Cir. 2000) and the steady line of subsequent decisions adopting its reasoning that the § 1692g dunning letter must provide the amount owed as of the date the letter is sent. Simply put, Defendant did not provide the amount owed as of the date of the October 30, 2012 FDCPA Letter. Instead, Defendant provided the amount owed as of October 15, 2012, in direct violation of the statute. Moreover, even if the statute permitted this conduct, Defendant still violated §1692g because the numbers are clearly wrong. In sum, Defendant gave a total number of $202,197.64. Then it gave an itemization of the $4,131.02 different from the total sum provided by Defendant. This itemization comes to $198,066.62. At worse, Defendant has not disclosed the amount of the debt. At best, it has made a disclosure that is confusing when viewed under the least sophisticated consumer standard required by the Fourth Circuit in U.S. v. National Financial Services, Inc., 98 F.3d 131 (4th Cir. 1996).

### STANDARD OF REVIEW

When a claim is challenged under Federal Rule of Civil Procedure 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true." *Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 707 (E.D. Va. 2009) (citing *Mylan Lab., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993)); *see also Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Consequently, this requires that the pleading be examined under the pleading obligations of Federal Rule of Civil Procedure 8. Rule 8(a)(2) requires that a complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Supreme Court has recently repeated that the purpose of this Rule is to provide a defendant with "'fair notice of what . . . the

claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alterations in original). "While a complaint comprised solely of labels and conclusions is insufficient to satisfy this rule, specific facts, elaborate arguments, or fanciful language are not necessary." *Spencer v. Earley*, 278 Fed. Appx. 254, 259 (4th Cir. 2008) (citing *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007)).


## ARGUMENT

**I. The Complaint Alleges with Particularity that Defendant Violated § 1692e(11) when it Omitted the Necessary Disclosure that it was a FDCPA-Governed "Debt Collector."**

**1. The Plain Language of the FDCPA and the Fourth Circuit Opinion in *Warren* Require the §1692e(11) Disclosure in Every Communication from a Debt Collector.**

Defendant sent Plaintiff and other class members the Notice of Servicing Transfer, which is attached to Defendant's memorandum as Exhibit 2. That letter does not contain the 15 U.S.C. § 1692e(11) "mini-Miranda" notice required in every communication to a consumer by a debt collector, set forth in the FDCPA as follows:

**§ 1692e.        False or misleading representations**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. ***Without limiting the general application of the foregoing***, ***the following conduct is a violation of this section***:

...

(11) ***The failure to disclose*** in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, ***that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose***, and the ***failure to disclose in subsequent communications that the communication is from a debt collector***, ***except*** that this paragraph shall not apply to a formal pleading made in connection with a legal action.

6

15 U.S.C. § 1692e (emphasis added). A "communication" in turn is defined as the "conveying of information regarding a debt directly or indirectly to any person through any medium."15 U.S.C. § 1692a(2). Thus, under the plain language of the § 1692e(11), a *per se* violation of the FDCPA occurs when: (1) a debt collector; (2) conveys information regarding a debt; (3) to a person; (4) without disclosing that the communication is from a debt collector.

As Defendant correctly acknowledges, the FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2) and that the Fourth Circuit has found this definition to be "broad." (Def. Mem. 5) (citing *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232 (4th Cir. 2007). In fact, in *Sayyed*, the Court of Appeals applied the FDCPA to find that communications between a creditor's attorney and a consumer's attorney regarding discovery in court litigation is still subject to the FDCPA as a communication at least indirectly in connection with the collection of a debt.[4]

Defendant also entirely ignores the 2011 decision of this Court considering and rejecting the exact same argument – that a statutory notice letter was not a FDCPA-governed "communication" because it did not demand payment. *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464 (E.D. Va. 2011) (J.Spencer). The Court explained:

---

[4] Defendant cites two Eastern District of Virginia decisions rejecting applicability of a section of the FDCPA not at issue in this case, in each instance failing to follow *Sayyed* – likely unaware of it when presented with limited briefing.  See *Penn v. Cumberland*, 883 F. Supp. 2d 581 (E.D. Va. 2012) (Ellis, J.) (Creditors attorney suing to collect a debt did not violate the FDCPA based on allegedly asserting a non-meritorious defense in a Demurrer); *Hinton v. Providence Dane, LLC*, 2011 U.S. Dist. LEXIS 134794 (E.D.Va. 2011) (Buchanan, J.) ("The alleged conduct took place as part of the plaintiff's lawsuit against the defendant under the FDCPA, not in the course or furtherance of a debt collection."). Of course, even if the Court could chose to ignore the published *Sayyad* decision, neither of these decisions is comparable to a direct notice mailed to the consumer by the debt collector.

> The FDCPA defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The Fourth Circuit explains that the FDCPA defines "communication" "broadly[.]" *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232 (4th Cir.2007). A communication need not expressly request payment of an outstanding debt in order to qualify as a communication with a consumer in connection with the collection of a debt. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir.2010).

*Id*. at 470-71.

In 2012, the Fourth Circuit again stated the obvious, finding that the broad phrase "communication in connection with the collection of a debt" meant exactly what it appeared to mean.  Any communication sent by a debt collector as part of its general effort to extract or cause payment of the debt is FDCPA governed.  *Warren v. Sessoms & Rogers*, 676 F.3d 365 (4th Cir. 2012). Importantly, in *Warren*, the Court of Appeals was considering the exact same statutory provision at issue in this case. In *Warren*, the plaintiff alleged a violation of § 1692e on two grounds. First, plaintiff alleged that defendant, a debt collection law firm, violated § 1692e(11) based on a telephone message stating: "[y]es this call is for Mr. or Mrs. Warren. This is John Harden with Sessoms & Rogers law firm. If you would, please give me a return call as soon as possible." *Id*. at 369. This message "provided a call back number but did not identify [Sessoms & Rogers] as a debt collector." *Id*. Second, plaintiff alleged several other violations of § 1692e based on her contention that Sessoms & Rogers used "false, deceptive, or misleading representations or means with the collection of [her] debt." The district court granted the law firm's motion to dismiss in a two-paragraph order, which concluded that the plaintiff's allegations did not show a material violation of the Act.

On appeal, the plaintiff challenged the district court's dismissal of her FDCPA claims as it pertains to the defendants' alleged violation of 15 U.S.C. § 1692e(11). *Id*. at 373. The plaintiff did not challenge the district court's ruling relating to her other alleged violations of § 1692e. In

reversing the decision of the district court, the Fourth Circuit distinguished the §1692e(11) disclosure from the other "conduct" provided in the non-exhaustive list in § 1692e. *Id*. at 374. In doing so, the court acknowledged that the § 1692e(11) disclosure does not "involve a *false representation*, or any affirmative representation" like the other types of false, deceptive or misleading conduct prohibited by the list in § 1692e. *Id*. (emphasis in original). Because of the clear language of the statute, the Fourth Circuit concluded that a materiality requirement did not attach to violations of § 1692e(11) even though "most courts have generally held that violations grounded in 'false representations' must reset on material misrepresentations." *Id.* In applying this principle, the court unequivocally stated that § 1692e(11) "expressly prohibits this exact *omission* by requiring debt collectors to disclose their status in every communication with a consumer." *Id*. (emphasis in original).

The sole basis for the alleged § 1692e(11) violation in *Warren* was the February 2009 voicemail from Mr. Harden, which never demanded a payment in any form or threatened collection action. *Id*. at 369. Yet, the Fourth Circuit still concluded that the district court erred because § 1692e(11) could not be clearer – debt collectors must disclose their status in every communication with a consumer. *Id*. at 374. If this were not the case, debt collectors could hide their identity in every communication with a consumer by simply providing the kind of discrete statement that was condemned in *Warren*.

The Fourth Circuit's decision in *Warren* is consistent with its position for more than twenty years that the inclusion of the § 1692e(11) notice is mandatory in all written communications from a debt collector to a consumer. In *Carroll v. Wolpoff & Abramson*, the Fourth Circuit construed remedially the FDCPA when confronted with a debt collector's

contention that the Act should be construed to require that it give the § 1692e(11) only once, in its initial letter to the consumer. 961 F.2d 459 (4th Cir. 1992). There the Court stated:

> Although Wolpoff and Abramson do not dispute the clarity of the Act's language, they argue that congressional intent in preventing the abuse of debtors will not be furthered by requiring the disclosure requirements of *section 1692e(11)* in follow-up letters. We simply disagree. Consumers sometimes do not receive first notices, and thus, follow-up letters may often provide them with their first notice of the debt collection process. In our view, it follows that requiring the disclosure requirements of *section 1692e(11)* in follow-up letters furthers congressional intent to prevent the abuse of debtors. Although the equities here are one step removed because a judgment on the debt preceded the follow-up letter at issue, there is still a possibility of over-reaching by creditors. Although over-reaching may occur in only a few circumstances, Congress [may] exercise its legislative judgment to adopt a reasonable margin of safety to insure its remedial goal.

*Id.* at 462 (quotation marks and internal citations omitted).

Other courts across the country have reached similar conclusions when interpreting § 1692e(11). For example, in *Seabrook v. Onondaga Bureau of Medical Economics*, plaintiff alleged a violation of § 1692e(11) after receiving a letter from the debt collector that failed to provide the required disclosures. 705 F. Supp. 81 (N.D. N.Y. 1989). In granting plaintiff's motion for summary judgment on the § 1692e(11) violation, the court stated:

> Given the plain and unambiguous language of the statute, this court follows the majority of courts which have addressed this issue and concludes that debt collectors, such as OMBE, *are required to clearly make the statutory disclosures in every communication to a debtor*. Thus, OMBE's motion for summary judgment on this issue is denied, and plaintiff's cross-motion is granted because OMBE violated § 1692e(11) of the FDCPA by failing to make the required disclosures.

*Id.* at 87 (emphasis added). In making this determination, the court even considered the fact that the letter "did not request any information" from the consumer. *Id*. at 86 (stating "[a]lthough the letter here did not request any information, the failure to include the disclosure language is nonetheless a violation of that section) (citing *Case v. Credit Bureau of Georgia*, 82-1107, slip op. at p. 4-5 (D. Ore. Nov. 11, 1982) (finding "[a]lthough the form letter does not request any

10

information, § 1692e(11)explicitly requires disclosure that any information obtained will be used for debt collection purposes in all communications made to collect a debt. The failure of defendant's form letter to make this disclosure is a violation of *section 1692e(11)*."). The absence of the request for information in the communication was not enough for the *Seabrook* court to ignore the plain language of § 1692e. To that end, the court noted that it was persuaded by the reasoning in *Cox v. Credit Bureau Systems, Inc*., which stated:

> It is not this court's role to question the wisdom of Congress; however, the court will note that Congress could reasonably have concluded that clear disclosures in every communication were necessary to prevent unfair practices and to avoid casebycase [sic] inquiries into whether a debtor reasonably knew the intent and consequences of the communication.

83-1082-P, 3, slip op (W.D. Kentucky 1984). This statement is entirely consistent with the approach by the Fourth Circuit in *Warren* and *Carroll*.

Even though *Warren* is cited in the Plaintiff's Complaint, Defendant devotes only a single footnote to its relevance and boldly concludes "*Warren* is not applicable here." (Def.'s Mem. 10). To that end, in the face of the Fourth Circuit's unremarkable statement of existing law, Defendant asserts that Plaintiff's reliance on *Warren* is misplaced because the statement arose within the context of dismissal by district court for failure to allege "material" misrepresentation. *Id*.

The Fourth Circuit has consistently demonstrated that, where, as in the case of the FDCPA, the statute's language is plain, the sole function of the courts is to enforce it according to its terms. *Scott v. Jones*, 964 F.2d 314, 316 (4th Cir. 1992). The Fourth Circuit refused to follow the debt collector's argument that the court resort to legislative history. It similarly refused later in *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007). (stating "W&A asks that we disregard the statutory text in order to imply some sort of common law litigation

11

immunity. We decline to do so. Rather, 'where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) (internal quotation marks omitted)). The court further added that "a bigger flaw in W & A's argument is its faulty premise: in analogizing to § 1983, W & A overlooks the FDCPA's statutory framework. The FDCPA in form and structure is a far cry from a Reconstruction-era civil rights statute. It is instead a 'comprehensive and reticulated' statutory scheme, involving clear definitions, precise requirements, and particularized remedies." *Id*.

The unmistakable teaching of the statement in *Warren*, against the backdrop of the Fourth Circuit's pronouncements in *Carroll* and *Sayyed* and its treatment of other attempts to have it ignore the plain language of the FDCPA confirms that § 1692e(11) means exactly what it says – that the § 1692e(11) disclosure must be made in every written communication from the debt collector to the consumer. This is entirely distinguishable from the general prohibition of § 1692e regarding the use of false or misleading affirmative representations "in connection with the collection of a debt." Regardless of whether any false or misleading representation occurred, the plain language of the statute and *Warren* undeniably confirm that § 1692e(11) prohibits Defendant from omitting its status as a debt collector when it communicates with the Plaintiff even when the message is as discrete as "[y]es this call is for Mr. or Mrs. Warren. This is John Harden with Sessoms & Rogers law firm. If you would, please give me a return call as soon as possible."

### 2. The Transfer of Servicing Letter is a Communication in Connection with a Debt.

Assuming, *arguendo*, that the court is not persuaded that the § 1692e(11) notice must be provided by a debt collector in every communication (*i.e.*, any time information regarding a debt

is conveyed to any person through any medium) as opposed to any time a representation is made "in connection with the collection of a debt," Plaintiff still plausibly alleged a violation of § 1692e(11) under the applicable case law interpreting the meaning "in connection with the collection of a debt." Before addressing this issue, however, it is important to note that Defendant's assertion that an "objective standard, rather than the least sophisticated consumer standard, applies in determining whether a communication was sent in connection with collection of a debt" is nonsensical. (Def.'s Mem. 6). Of course, an objective standard applies because the least sophisticated consumer standard is an objective inquiry. *Wright v. Credit Bureau of Georgia, Inc.*, 548 F. Supp. 591, 600 (N.D.Ga. 1982) (stating "[t]he 'least sophisticated debtor' standard is an objective standard. The question is not whether these plaintiffs were deceived or mislead, but rather whether an unsophisticated consumer would have been mislead."). Defendant's assertion is a clear example of its misunderstanding of the FDCPA and the Seventh Circuit's decision in *Ruth*, which did not adopt a new standard. 577 F.3d 790 (7th Cir. 2009). Instead, *Ruth* clarified that the least sophisticated standard applied when interpreting whether the communication was sent 'in connection with a debt' after the district court erroneously granted summary judgment for the defendants because the plaintiff failed to present extrinsic evidence that the unsophisticated consumer would view the notice as a communication. In doing so, the Seventh Circuit rejected the district court's erroneous readings of its previous decisions to require a plaintiff "to present extrinsic survey evidence proving that the unsophisticated consumers would be deceived or misled." *Id*. Accordingly, the court held that "whether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact, to be proven like any other fact." This holding[5] is consistent with the

---

[5] The holding also reflects that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not the

objective standard of the least sophisticated consumer standard, which evaluates the conduct based on perceptions external to a particular person rather the individual views of a person or group of people involved in a survey.

The Court need not do anything more than simply read Exhibit 2 to reach the conclusion that it is FDCPA-governed.  It is not simply a notice that Defendant had taken over the servicing collection of the debt, though by itself this would still be FDCPA-governed as at least "in connection" with NationStar's collection of the debt.  But the communication also contained both direct and indirect demands for payment.  The letter advised, "You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from BANK OF AMERICA to Nationstar Mortgage LLC, effective 10/15/12."  (Def. Mem., Ex. 2). The letter further stated "[t]he date that Nationstar Mortgage will start accepting payments from you is 10/15/12. You can pay online via the Nationstar Mortgage website at **www.MyNationstarMTG.com**, or you can send all payments due on or after that date to: Nationstar Mortgage LLC PO Box 650783 Dallas, Texas 75265." *Id.*

Defendant's position is that its Notice of Servicing is not a communication in connection with the collection of a debt because it is a required notice under RESPA. However, a cursory review of the Servicing Notice and the requirements of § 2605 reveal that Defendant provided additional information beyond the notice requirements of the statute. In particular, a notice of servicing transfer under § 2605 requires the following information:

   (A) The effective date of transfer of the servicing described in such paragraph.

   (B) The name, address, and toll-free or collect call telephone number of the transferee servicer.

---

proper vehicle for Defendant's argument.

(C) A toll-free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

(D) The name and toll-free or collect call telephone number for (i) an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

(E) The date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.

(F) Any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of mortgage life or disability insurance or an other type of optional insurance and what action, if any, the borrower must take to maintain coverage.

(G) A statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the security instruments other than terms directly related to the servicing of such loan.

12 U.S.C. §2605(b)(3). Nothing in this section requires Defendant to instruct consumers where they can go to pay or where to send their payments. (Def.'s Ex. 2) ("[y]ou can pay online via the Nationstar Mortgage website at www.MyNationstarMTG.com, or you can send all payments due on or after that date to.... Enclosed is your Welcome Letter which includes a payment coupon with detailed loan information."). This language is likely to lead any consumer to believe that the communication was in reference to a mortgage debt and to induce payment through the methods provided by the letter. This is especially true when it is the initial communication between a debt collector and a plaintiff who have no other relationship other than a defaulted mortgage debt. At the very least, a reasonable trier of fact could conclude that the additional language in the servicing notice would lead the least sophisticated consumer to believe the communication was sent in connection with an attempt to collect a debt. Further, even if the subject letter did not

itself regard the payment of the mortgage, the notice still necessarily was in connection with the collection of the debt.  The only role played by NationStar was the collection of the debt.  And thus everything it did and every communication it made was in connection with the collection of the debt.

### 3. Defendant Mischaracterizes the Seventh Circuit's Decision in *Thompson*.

Defendant's authority in support of its motion to dismiss Plaintiff's § 1692e(11) claim focuses on one non-binding opinion from the United States District Court for the Northern District of Indiana's decision in *Thompson v. BAC Home Loans Servicing, L.P*., 2010 U.S. Dist. LEXIS 30891 (N.D. Ind. 2010).[6] Defendant understandably cites this case because it involved a Servicing Notice purportedly mailed to the consumer pursuant to 12 U.S.C. § 2605 of the Real Estate Settlement Procedures Act, where the defendant successfully argued that the Servicing Notice was sent pursuant to RESPA only and not in the collection of a debt. *Id*. at 7. However, the factual and legal similarities between *Thompson* and the present case do not go far beyond the label of the document.

Defendant's reliance in *Thompson* is entirely misplaced because the servicing notice in that case actually contained the § 1692e(11) disclosure. Id. at 7 ("[n]ear the bottom of the first page, the [Servicing] Notice includes the following language: BAC Home Loans is required by

---

[6] Without any analysis, Defendant also selectively quotes several other opinions in support of its motion to dismiss. For example, Defendant cites *Hinton v. Providence Dane, LLC*, 2011 U.S. Dist. LEXIS 134794 (E.D. Va. 2011) as "finding defendant did not violate section 1692e because 'the failure to disclose the nature of the communication creates liability only where it takes place in connection with the collection of any debt.'" (Def.'s Mem. 6). This is entirely misleading because *Hinton* is inapposite, is merely a very short summary order addressing a debt collector's motion to dismiss a rambling, poorly articulated, kitchen sink Amended Complaint filed by a *pro se* plaintiff, which stands for the proposition that there is no violation of 15 U.S.C. § 1692e(11) when the defendant in an FDCPA action brought in federal court propounds discovery in that action and in so doing does not state that the propounded discovery is a communication from a debt collector.

law to inform you that this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose."). *Id*. To that end, the legal issue before the court in *Thompson* was whether the servicing notice was an "initial communication with a consumer in connection with the collection of the Plaintiff's debt, thus triggering the duty to provide the Validation Notice [in § 1692g]." *Id*. at 6. Yet, in making its decision on the merits of the plaintiff's § 1692g claim, even the *Thompson* court recognized that the "language that is required by the FDCPA to be in ***any*** initial communication with a consumer was located on the bottom of the first page." *Id*. In making this statement, the court directly cited to 15 U.S.C. § 1692e(11), which only referenced in passing in one other sentence in the entire opinion. In this instance, there is little doubt that the Notice of Servicing Transfer is the initial communication between Defendant and Plaintiff. Thus, even if *Warren* was inapplicable and *Thompson* was binding, the Defendant's motion should still be denied because Thompson recognized that "any initial communication" must contain the § 1692e(11) disclosures. This interpretation is also supported by the purpose of the FDCPA, which absolutely prohibits a debt collector from communicating with a consumer – even in the absence of a demand for payment – without disclosing its identity. Any other interpretation would allow unscrupulous debt collectors to hide their identities by broadly disguising their letters as something other than a communication in connection with a debt to induce a consumer to respond to the communication.

Shockingly, Defendant asserts that the Seventh Circuit's rationale in *Ruth* is "highly persuasive because it promotes the FDCPA's basic purpose of protecting consumers from abusive debt collection practices." (Def.'s Mem. 7). In *Ruth*, the Seventh Circuit reversed the decision of the trial court that granted summary judgment on plaintiff's alleged violation of § 1692e(10). *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009). Moreover, the Seventh

Circuit remanded the case with instructions to enter judgment in favor of the plaintiffs. *Id*. at

806. In doing so, the court rejected the debt collector's argument that the communication was a

Privacy Notice of Financial Information not sent to the plaintiff in connection with the collection

of her outstanding debt, but rather to satisfy the statutory requirements of the Gramm-Leach-

Billey Act. In doing so, the court stated:

> …we believe that any reasonable trier of fact *would* conclude that the
> notice was sent in  connection with an attempt to collect a debt. The notice was
> sent in the same envelope as the collection letter, which the defendants admit was
> sent for debt-collection purposes. Both the notice and the letter refer to both
> defendants: Triumph Partnerships, the owner of the defaulted debt, and TAS, the
> company hired to try to collect it. The only relationship the defendants had with
> the plaintiffs arose out of Triumph Partnerships' ownership of the plaintiffs'
> defaulted debt.  In sum, the defendants would not have sent this combination of
> materials to the plaintiffs if they had not been attempting to collect a debt.

*Id*. at 799 (emphasis added). The same reasoning applied by the Seventh Circuit is applicable

here because Defendant's Notice of Servicing references the enclosed "Welcome Letter," the

Welcome Letter was sent for debt collection purposes, the Notice of Servicing refers to

Defendant as the new entity with "the rights to collect payment" from the Plaintiff, and

Plaintiff's relationship with the Defendant arose solely from the transferring of the defaulted

debt. Similar facts lead the Seventh Circuit to reverse the decision of the trial court and remand

with instructions to enter judgment in favor of the Plaintiffs. Suffice it to say that similar facts

warrant denial of Defendant's Rule 12(b)(6) motion to dismiss.

**II.**       **The Complaint Alleges with Particularity That Defendant Violated § 1692g by
              Failing to Provide the Amount of the Debt Due on the Date the FDCPA Letter
              was Sent and Because the Amount was Numerically Wrong.**

> **1. Defendant Failed to Disclose the Amount of the Debt as of the Date of Exhibit
>    3 to Defendant's Motion to Dismiss.**

A "significant feature of [the FDCPA] is its provision requiring the validation of debts."

Senate Report No. 95-382, 95th Cong., 1st Sess., at 4, reprinted in 1977 U.S.C.C.A.N. 1695, at

18

1699. This "validation notice" mandated by 15 U.S.C § 1692g(a)(1)-(5) requires a debt collector to disclose in its initial written communication with a consumer (or within five days thereafter) the amount of the debt and the name of the creditor to whom it is owed, together with other statements notifying consumers of specific rights afforded them by Congress and the corresponding duties imposed on the debt collector. This portion of the Act reads as follows:

### § 1692g.        Validation of debts

*Notice of debt; contents*
(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
(1)      the amount of the debt;
(2)      the name of the creditor to whom the debt is owed;
(3)      a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4)      a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5)      a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Defendant's October 30, 2012 thirty-day validation notice purports to make the § 1692g(a)(1) disclosure as follows:

Your total debt at the time of the transfer is $202,197.64. This amount includes your outstanding Unpaid Principal Balance of $186,825.96, $9,865.74 in Interest, $1,334.92 from Fees, and $40.00 from expenses paid on your behalf.

There is no dispute that Plaintiff's mortgage loan was "assigned, sold, or transferred from Bank of America to Nationstar Mortgage, LLC effective October 15, 2102." The amount of the debt had increased over the ten days before Defendant sent its October 30, 2012 § 1692g thirty-day

validation notice disclosure letter, which Defendant identifies in its memorandum as "the FDCPA Letter."

Plaintiff's position is threefold: (1) The amount of the debt had to be disclosed by stating the amount of the debt as of October 30, 2012, the date of the letter giving the thirty day validation notice disclosure; (2) the disclosure is numerically wrong; and (3) the disclosure is defective when considered under the required least-sophisticated-consumer standard of review.

### 2. Defendant was Required to Disclose the Amount of the Debt Due on the Date that the Collection Letter was sent.

The seminal Court of Appeals case universally looked to with respect to the amount of the debt disclosure is *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000). The Seventh Circuit ruled that § 1692g(a)(1) requires that a debt collector collecting a consumer debt state the total amount due on the date that the letter was sent. Writing for the Court, Judge Posner stated:

> What they certainly could do was to state the total amount due--interest and other charges as well as principal -- ***on the date the dunning letter was sent***. We think the statute required this.

*Id*. at 875. (emphasis added). In moving to dismiss, Nationstar's position is that:

> The FDCPA Letter discloses the amount of debt as of a specific date. Namely, it states, "Your total debt as of 10/15/12 is $202,197.61."

Defendant ignores the plain text of the Seventh Circuit's ruling. It points to one case that does not follow the *Miller v. McCalla* ruling that the FDCPA requires that a debt collector collecting a consumer debt state the total amount due on the date that the letter was sent. It "acknowledges that some courts have erroneously interpreted *Miller* to require that the total amount of the debt be stated as the total amount due on the date a collection letter is sent." In making this acknowledgment, Defendant suggests the existence of two cases that make such

"erroneous" rulings. As demonstrated below, essentially the entire body of relevant case law belies Defendant's argument.

Defendant suggests that the requirement that a debt collector collecting a consumer debt state the total amount due on the date that the letter was sent flows from the "safe harbor" language contained in Judge Posner's opinion, and is not part of the actual Seventh Circuit ruling. (Def.'s Mem. fn. 6). A quick read of *Miller v. McCalla* shows that Defendant clearly misstates the explicit ruling in the Seventh Circuit's concise and direct three page ruling. The safe harbor text contained in the opinion begins on page 876. It is preceded by the court's plain statement on page 875 that the FDCPA required the debt collector to "state the total amount due--interest and other charges as well as principal-- ***on the date the dunning letter was sent***." *Id*. (emphasis added). In *Miller v. McCalla* "(T)he court held that the collector must disclose the dollar amount of the debt, including the interest, *as of the date of the letter*. ... Judge Posner's opinion adheres to the letter and the spirit of the FDCPA. " *McDowall v. Leschack & Grodensky, P.C.*, 279 F. Supp. 2d 197, 199  (S.D. N.Y. 2003) (emphasis added); *see also Jackson v. Aman Collection Service, Inc.*, 2001 U.S. Dist. LEXIS 22238, *6 (S.D. Ind. 2001) (The (*Miller v. McCalla*) court also wrote that the FDCPA required the debt collector "to state the total amount due--interest and other charges as well as principal--***on the date the dunning letter was sent***.") (emphasis added); *Wilkerson v. Bowman, Heintz, Boscia, Vician*, 200 F.R.D. 605 (N.D. Ill. 2001) (stating *Miller v. McCalla* requires the debt collector to provide the total amount due, including interest and other charges, as of the date the letter was sent.).

Defendant cites one early case, *Jolly v. Shapiro*, 237 F. Supp. 2d 888 (N.D. Ill. 2002), that found there not to be a § 1692g(a)(1) violation when the debt collector sent a December 24, 2011 dunning letter that made the amount of the debt disclosure as of a date earlier than the date

that it sent its § 1692g thirty-day-validation-notice disclosure letter. The amount of the debt disclosure in *Jolly* read as follows:

> "As of December 13, 2001, our client has advised that the amount of the debt is $74,471.69."

Plaintiff acknowledges that the court in *Jolly v. Shapiro* saw no violation in disclosing the amount of the debt as of a date earlier than the date of the thirty day validation notice. However, as is addressed in greater detail below, *Jolly* is not only inconsistent with the otherwise universally followed teaching of Judge Posner in *Miller v. McCalla*, but the nature of the amount of the debt disclosure made by the debt collector in the *Jolly* dunning letter differs significantly from the amount of the debt disclosure made by Nationstar to Plaintiff.

The amount of the debt disclosure at issue in *Jolly*, once again, stated "(A)s of December 13, 2001, our client has advised that the amount of the debt is $74,471.69." Compare that to Nationstar's amount of the debt disclosure to Plaintiff:

> Your total debt at the time of the transfer is $202,197.64. This amount includes your outstanding Unpaid Principal Balance of $186,825.96, $9,865.74 in Interest, $1,334.92 from Fees, and $40.00 from expenses paid on your behalf.

Nationstar gave a total number, $202,197.64. Then it gave an itemization of the $202,197.64. The itemization does not add up to the amount of the total number. The itemization comes to $198,066.62. The difference between the total number and the sum of the itemization is $4,131.02. At worse, Defendant has not disclosed the amount of the debt. At best, it has made a disclosure that is confusing when viewed under the least-sophisticated consumer standard required by the Fourth Circuit in *National Financial Services*. Indeed, a read of the entire *Jolly* opinion demonstrates that the court would have so found had it been considering Nationstar's thirty-day validation notice disclosure of the amount of the debt. Defendant presents the following interpretation of the ruling in *Jolly*:

22

Accordingly, the court concluded that "a collection letter which states either the amount due as of the date of the letter or as of a specific date is in compliance with § 1692."

(Def.'s Mem. 12).

It's not that simple. The court in *Jolly* found "(A)s of December 13, 2001, our client has advised that the amount of the debt is $74,471.69" to pass muster under the least sophisticated consumer standard. The court made the following cautionary analysis:

> However, Judge Posner emphasizes that it is not necessary that a debt collector use this form of words to avoid violating the statute; but if he does, **and (to repeat an essential qualification) does not add other words that confuse the message**, he will as a matter of law have discharged his duty to state clearly the amount due. *Miller,* 214 F.3d at 876.
> ...
> As previously stated, Judge Posner explained that a debt collector who uses the safe harbor language will not violate the *§ 1692g,* **as long as the information that is provided by the debt collector is accurate and does not confuse.** *See id. at 876.* Additionally, and critical to the Court's analysis, is the fact that Judge Posner holds that it is not necessary that a debt collector use this form of words to avoid violation the statute. *Id.* Thus, an alteration or an entirely different notice can be used in collection letters **as long as it does not cause confusion for the unsophisticated consumer**.

*Jolly*, 237 F. Supp. at 893 (emphasis added).

*Jolly* ignored the plain text on page 875 in *Miller v. McCalla*, preceding the safe harbor text on page 876, which explicitly states that the FDCPA requires that the debt collector disclose the amount of the debt "on the date the dunning letter was sent." Unlike the dunning letter in *Jolly*, Nationstar's dunning letter is not accurate, and it does cause confusion, certainly when viewed under the least sophisticated consumer standard. Defendant's FDCPA letter would not have passed muster under the analysis undertaken by the court in *Jolly*.

Defendant would be well advised to bring its collection practices into conformity with the Seventh Circuit's seminal ruling. This is not merely gratuitous advice offered by Plaintiff's counsel. The American Collector's Association, the international trade association of third-party

23

debt collection businesses, makes the same suggestion to its membership in *ACA Fastfax #1148, Letter Requirements: Validation Notice*. The ACA, no friend of the undersigned counsel, in addressing *Miller v. McCalla*, advises its members to "determine the amount of the debt <u>as of the date appearing on a collection letter</u>." Attached as Exhibit 1 is a copy of the ACA's Fastfax #1148. It further advises that "(T)he Seventh Circuit clarified that if a debt collector is trying to collect only the amount due <u>on the date the letter is sent</u>, the debt collector complies with the FDCPA by stating the balance due, noting that the creditor has assigned the account to the debt collector for collection and requests the consumer remit the balance listed." Pages 1 and 2 of *Fastfax #1148* (emphasis added).

Defendant "acknowledges that some courts have erroneously interpreted *Miller* to require that the total amount of the debt be stated as the total amount due on the date a collection letter is sent." (Def.'s Mem. 13). It cites two cases, suggesting that "some courts" equals two courts that have made such "erroneous" interpretations of the seminal teaching of *Miller*. *Id*. In making this argument, Defendant flatly misrepresents the extensive development of the law as to the timing of the amount of the debt disclosure under 15 U.S.C. § 1692g.

On the heels of the Seventh Circuit's *Miller v. McCalla* ruling, in *Person v. Stupar, Schuster & Cooper, S.C.*, 136 F. Supp. 2d 957 (E.D. Wisc. 2001), the court denied the debt collectors' motion to dismiss, finding that "Defendant debt collectors did not, for example, inform Person of the precise amount Person owed as of the date of the Letter," and that "at this stage in the proceedings, Person has alleged facts sufficient to state a claim against defendant debt collectors for failure to state the total amount of the debt under *15 U.S.C. § 1692g(a)(1)*." Defendants sent the consumer a June 26, 1999 dunning letter that disclosed the amount of the debt as of June 1, 1999. The debt collectors stated in pertinent part the following:

24

> Dear Mr. Person:
>
> Our law firm has been retained by Rubidell Resort Condominium Association, Inc. d/b/a River Bend Resort to collect from you the entire balance, **which as of 6/1/99, was $ 987.71**, plus attorney's fees, that you owe to Rubidell Resort Condominium Association, Inc. d/b/a River Bend Resort.

(emphasis added). The court correctly, not erroneously, interpreted the FDCPA to require the debt collector to disclose the amount of the date claimed due as of the date of the dunning letter. ("[t]he FDCPA required defendant debt collectors to inform Person of the total amount Person allegedly owed Rubidell as of June 26, 1999, *the date defendant debt collectors sent the Letter*.") (emphasis added).

More recently, in *Jones v. Midland Funding*, LLC, 755 F. Supp. 2d 393, 397 (D. Conn. 2010) the court granted the consumer plaintiff's motion for summary judgment on his § 1692g(a)(1) claim "because the collection letter at issue on the motion for summary judgment failed to clearly and accurately state the amount of the debt as required by the statute." In so doing, the court surveyed the development of the relevant case law as follows:

> The requirement that a validation notice correctly state the amount of the debt has produced conflicting judicial opinions. Some courts have held that a validation notice fails to satisfy the statute unless it states the total amount due as of the date the letter is sent and also discloses whether the amount of the debt will increase due to interest. See *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872 (7th Cir. 2000)*; *Dragon 483 F. Supp. 2d at 201-03*; *Smith v. Lyons, Doughty & Veldhuius, P.C., No. 07-5139, 2008 U.S. Dist. LEXIS 56725, 2008 WL 2885887, at *6 (D.N.J. July 23, 2008)*; *Jackson v. Aman Collection Serv., No. IP 01-0100-C-T/K, 2001 U.S. Dist. LEXIS 22238, 2001 WL 1708829, at *3 (S.D. Ind. Dec. 14, 2001)*.  More recently, other courts have held that a validation notice satisfies the statute if it states the total amount of the debt (including interest and any other charges) as of the date the letter is sent. See *Adlam v. FMS, No. 09 Civ. 9129 (SAS), 2010 U.S. Dist. LEXIS 33433, 2010 WL 1328958, at *3 (S.D.N.Y. April 5, 2010)*; *Pifko v. CCB Credit Servs., No. 09-CV-3057 (JS)(WDW), 2010 U.S. Dist. LEXIS 69872, 2010 WL 2771832, at *3-4 (E.D.N.Y. July 7, 2010)*; *Weiss v. Zwicker & Assocs., 664 F. Supp. 2d 214, 217 (E.D.N.Y. 2009)*.

As shown by the sampling identified in *Jones*, in addition to *Miller*, there is an entire body of cases developed over more than a decade that unequivocally show that for a 15 U.S.C. § 1692g thirty-day validation notice to pass muster, its statement of the amount of the debt has to be accurate as of the date of mailing.

### 3. Regardless, the Complaint Alleges that the Validation Notice is Numerically Wrong and Confusing.

Even assuming for the sake of argument that § 1692g(a)(1) allowed the disclosure of the amount of the debt on a date prior to the date of the disclosure to the consumer of his thirty day validation rights, the Complaint plausibly alleges that Nationstar violated §1692g because the numbers are clearly wrong. Again, Defendant's attempt to disclose the amount of the debt states the following:

> Your total debt at the time of the transfer is $202,197.64. This amount includes your outstanding Unpaid Principal Balance of $186,825.96, $9,865.74 in Interest, $1,334.92 from Fees, and $40.00 from expenses paid on your behalf.

Defendant made a disclosure specifying the total debt at the time of the October 15, 2012 transfer as being $202,197.64. It then broke this number down as including "outstanding Unpaid Principal Balance of $186,825.96, $9,865.74 in Interest, $1,334.92 from Fees, and $40.00 from expenses paid on your behalf." Defendant's purported itemization does not add up to $202,197.64. The itemization comes to $198,066.62, creating a discrepancy of $4131.02, as set forth in the following table:

| | |
|---|---|
| Unpaid Principal Balance | $186,825.96 |
| Interest | 9,865.74 |
| Fees | 1,334.92 |
| Expenses paid on your behalf | 40.00 |

| | |
|---|---|
| **TOTAL OF THE ITEMIZED §** **1692g(a)(3) DISCLOSURE** | **$198,066.62** |
| | |
| THE UNITEMIZED § 1692g(a)(3) DISCLOSURE | $202,197.64 |
| The Itemized Disclosure | -198,066.62 |
| **Difference Between the Two §** **1692g(a)(3) Disclosures** | **$4131.02** |

**4. The Disclosure is Defective when Considered Under the Required Least-Sophisticated-Consumer Standard of Review.**

The amount of the debt component of the § 1692g thirty-day validation notice cannot be confusing to the least sophisticated consumer. The standard to be satisfied is whether the collection letter states the amount of the debt clearly enough that the recipient is likely to understand it." *Acik v. I.C. Systems, Inc.*, 640 F.Supp. 2s 1019, 2009 U.S. Dist. LEXIS 70191 (N.D. Il. 2009) (internal quotation marks omitted). It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it.  *Chuway v. Nat'l Action Fin. Servs. Inc.*, 362 F.3d 944, 948 (7th Cir. 2004)).  As the Fourth Circuit put it long ago, a debt collector does not comply with *§ 1692g* merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor. *Miller v. Payco General American Credits, Inc.*, 943 F.2d 482, 483 (4th Cir. 1991).

Nationstar did not clearly set forth the amount of the debt that Mr. Kelly owed. The result of the § 1692g validation notice dunning letter is that "(T)he least sophisticated consumer could reasonably conclude that the debt collection notice sets forth two different amounts with respect to the amount of the debt owed and therefore be confused as to which amount they are being instructed to remit to the debt collector,) the debt collector has failed "to clearly convey the

27

amount of the debt owed" and the "debt collection notice sent to plaintiff violates *15 U.S.C. § 1692g(a)(1)*" and plaintiff is entitled to summary judgment. *Larsen v. JBC Legal Group*, P.C., 533 F. Supp. 2d 290, 306 (E.D. NY). As noted in *Jones v. Midland Funding*, LLC, 755 F. Supp. 2d 393, 397 (D. Conn. 2010):

> When determining whether *§ 1692g* has been violated, courts use "an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector." *Savino v. Computer Credit, Inc., 164 F.3d 81, 85 (2d Cir. 1998)* (quoting *Russell, 74 F.3d at 34*). "The critical question is . . . whether the notice fails to convey the required information 'clearly and effectively and thereby makes the lest sophisticated consumer uncertain' as to the meaning of the message." *DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001)* (quoting *Savino, 164 F.3d at 85*).

While Defendant has found one case that allows the disclosure of the amount of the debt on a date earlier than the date of the collection letter that makes the required § 1692g thirty-day validation notice disclosures, that case provides no solace here. Defendant did not complete the *Jolly* court's analysis by attempting to assert that its amount of the debt disclosure was neither inaccurate nor confusing under the least sophisticated consumer standard. It did not make the argument because it could not argue that the following amount-of-the-debt disclosure was accurate and that it was not confusing. Simply put, the numbers are inconsistent and confusing. Does Plaintiff owe $202,197.64? Does he owe $198,066.62? Why is there a $4131.02 difference between the total number first stated and the sum of the itemization? The FDCPA's objective is to require debt collectors to clearly specify the amount of debt owed. When the description of amount of debt owed is contradictory, and not clearly conveyed, the letter does not comply with § 1692g of the FDCPA. *Kolganov v. Phillips & Cohen Associates, LTD*, 2004 U.S. Dist. LEXIS 7069, *2&3 (E.D. N.Y. 2004).

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint must be denied.

Respectfully Submitted,
Timothy Kelly
By Counsel

_____/s/_____
By: Kristi C. Kelly, VSB#72791
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, 2nd floor
Fairfax, VA 22030
(703) 277-9774
(703) 591-9285 (Fax)
kkelly@siplfirm.com

By: Dale W. Pittman, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com

Leonard A. Bennett, VSB#37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, V A 23601
(757) 930-3660
(757) 930-3662 (Fax)

Matthew J. Erausquin, VSB#65434
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
(703) 273-7770
(888) 892-3513 (Fax)

*Counsels for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2013, I filed a copy of the foregoing with the Clerk of Court using the CM/ECF system and which will send notification of such filing to the following CM/ECF participants:

John C. Lynch, Esq.
Jason E. Manning, Esq.
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
*Counsel for Defendant*

_____/s/_____
Kristi C. Kelly, VSB#72791
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
Phone: (703) 277-9774
Fax: (703) 591-9285
Email: kkelly@siplfirm.com